UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOLOCK CAPITAL, LLC and<br>DBW INVESTMENTS, LLC<br><br>            Plaintiffs,<br><br>        - against -<br><br>VNUE, INC.,<br><br>            Defendants. | Case No. 21-cv-8103 (VSB)<br><br>**AMENDED COMPLAINT<br>AND JURY DEMAND** |

Plaintiffs GOLOCK Capital, LLC and DBW Investments, LLC ("GOLOCK," "DBW,"

and collectively, "Plaintiffs"), by their attorneys, The Law Offices of Daniel S. Steinberg P.C.,

for their amended complaint against defendant VNUE, Inc. ("VNUE" or "Defendant"), allege as

follows:

### Nature of the Case

1.      This action concerns a series of investments made by Plaintiffs in VNUE, a music

technology company that records live concerts and sells that content to consumers.  In exchange

for their investments, Plaintiffs obtained seven convertible promissory notes (the "Notes" or the

"Convertible Notes"), six of which were twice amended when VNUE was unable to repay the

principal and interest.  The seventh note was issued subsequent to the amendments.

2.      In connection with two of the amendments, VNUE also agreed to issue to

Plaintiffs warrants entitling them to purchase shares of common stock.

3.      The Notes issued by VNUE contain conversion features that enabled Plaintiffs, as

the holders of the Notes, to convert all or portions of principal and interest into shares of the

common stock of VNUE, a public company.

4.     Defendant breached its obligations under the Notes.  In addition to defaulting on the payment of principal and interest, VNUE blocked Plaintiffs from exercising their conversion rights.  With regard to the warrants, VNUE failed and refused to issue them to Plaintiffs. Accordingly, Plaintiffs commenced this action to recover their damages and for related relief.

5.     Ten days after Plaintiffs filed their complaint in this action, the New York State Court of Appeals decided the case of *Adar Bays, LLC v. GeneSYS ID, Inc.*, 2021 N.Y. LEXIS 2206 (Oct. 14, 2021).  Contrary to the vast weight of prior case authority, including cases decided in this district, the Court of Appeals held, *inter alia*, that, for purposes of a borrower's defense of usury, "floating-price conversion options have intrinsic value that is bargained for" and "should be treated as a component of interest." *Id.* at *24.  Plaintiffs, therefore, file this amended complaint on account of the change in New York law.

### Parties

6.     Plaintiff GOLOCK is a limited liability company, formed under the laws of the State of Washington, with its principal place of business located in Bainbridge Island, Washington.

7.     Plaintiff DBW is a limited liability company, formed under the laws of the State of Washington, with its principal place of business located in Bainbridge Island, Washington.

8.     Upon information and belief, defendant VNUE is a corporation, organized under the laws of the State of Nevada, with a place of business at 104 West 29th Street, 11th Floor, New York, New York 10001.

**Jurisdiction and Venue**

9.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between citizens of different states.

10.     Venue for this action properly lies within this jurisdictional district pursuant to 28

U.S.C. §§ 1391(b)(1) and (c)(2) because VNUE at all times relevant maintained offices located

in this judicial district.  Further, venue is proper pursuant to the forum selection clauses

contained in the Notes at issue herein.

**Allegations Common to All Claims**

**The Five Notes Held by GOLOCK**

11.     GOLOCK is the holder of five of the Convertible Notes made by VNUE (each a

"GOLOCK Note" and collectively, the "GOLOCK Notes").  The GOLOCK Notes include:

    a.     GOLOCK Note 1, a "10% Convertible Promissory Note," issued as of
September 1, 2017, in the principal amount of $105,000, with a maturity
date of June 1, 2018.  A true copy of GOLOCK Note 1 is annexed hereto
as Exhibit A;

    b.     GOLOCK Note 2, an "Amended Convertible Promissory Note," issued on
or about October 19, 2017, in the principal amount of $50,000, with
interest at 10% per annum and a maturity date of June 26, 2018.  A true
copy of GOLOCK Note 2 is annexed hereto as Exhibit B;

    c.     GOLOCK Note 3, a "10% Convertible Promissory Note," issued as of
November 13, 2017, in the principal amount of $36,750, with a maturity
date of August 13, 2018.  A true copy of GOLOCK Note 3 is annexed
hereto as Exhibit C;

    d.     GOLOCK Note 4, a "10% Convertible Promissory Note," issued as of
February 2, 2018, in the principal amount of $40,000, with a maturity date
of November 2, 2018.  A true copy of GOLOCK Note 4 is annexed hereto
as Exhibit D; and

    e.     GOLOCK Note 5, a "Convertible Promissory Note," issued as of
November 15, 2019, in the principal amount of $53,331, with interest at

12% per annum and a maturity date of August 14, 2020.  A true copy of GOLOCK Note 5 is annexed hereto as Exhibit E.

12.     The conversion features of the first four GOLOCK Notes are fixed-price conversion options.  The conversion feature of GOLOCK Note 5, however, was a floating-price conversion option.

13.     At the time of issuance of each of the GOLOCK Notes, it was a matter of custom and practice in high-risk investments of the kind at issue herein to secure such investments by convertible promissory notes.

14.     At the time of issuance of each of the GOLOCK Notes, GOLOCK did not intend to charge or collect interest at a usurious rate.  Rather, it understood that the conversion features were not to be considered when calculating whether the Notes charged interest in excess of the legal limit.

15.     VNUE failed to pay principal and/or interest when due on the GOLOCK Notes.

16.     By "Amendment #1 to the Convertible Promissory Notes" ("GOLOCK Amendment 1"), effective as of November 5, 2018, a copy of which is annexed hereto as Exhibit F, GOLOCK and VNUE agreed, *inter alia*, to extend the maturity dates of the first four GOLOCK Notes to November 30, 2018.  Additionally, unpaid amounts were added to the principal of each of the first four GOLOCK Notes, increasing the principal amounts to $139,504, $63,125, $48,071, and $51,367 respectively.

17.     Under GOLOCK Amendment 1, the terms of the conversion features of GOLOCK Notes 1 through 4 were revised.  In so doing, it was not the intention to charge or collect interest at a usurious rate.  Rather, it was understood that the conversion features of the Notes, as amended, were not to be included when calculating whether the Notes charged interest in excess of the legal limit.

18.     By "Amendment #2 to the Convertible Promissory Notes" ("GOLOCK Amendment 2"), effective as of April 29, 2019, a copy of which is annexed hereto as Exhibit G, GOLOCK and VNUE agreed, *inter alia*, to a further extension of the maturity dates of the first four GOLOCK Notes to July 31, 2019.  Additionally, unpaid amounts again were added to the principal of each of the first four GOLOCK Notes, increasing the principal amounts to $142,356, $64,415, $49,054, and $52,417 respectively.

19.     In entering into GOLOCK Amendment 2, it was not the intention to charge or collect interest at a usurious rate.  Rather, it continued to be understood that the conversion features of the Notes, as amended, were not to be included when calculating whether the Notes charged interest in excess of the legal limit.

**The Two Notes Held by DBW**

20.     DBW is the holder of two of the Convertible Notes made by VNUE (each a "DBW Note" and collectively, the "DBW Notes").  The DBW Notes include:

     a.     DBW Note 1, a "10% Convertible Promissory Note," issued as of December 20, 2017, in the principal amount of $21,000, with a maturity date of September 20, 2018.  A true copy of DBW Note 1 is annexed hereto as Exhibit H; and

     b.     DBW Note 2, a "10% Convertible Promissory Note," issued as of January 18, 2018, in the principal amount of $35,000, with a maturity date of October 18, 2018.  A true copy of DBW Note 2 is annexed hereto as Exhibit I.

21.     The conversion features of the DBW Notes are fixed-price conversion options.

22.     At the time of issuance of each of the DBW Notes, it was a matter of custom and practice in high-risk investments of the kind at issue herein to secure such investments by convertible promissory notes.

23.     At the time of issuance of each of the DBW Notes, DBW did not intend to charge or collect interest at a usurious rate.  Rather, it understood that the conversion features were not to be considered when calculating whether the Notes charged interest in excess of the legal limit.

24.     VNUE failed to pay principal and/or interest when due on the DBW Notes.

25.     By "Amendment #1 to the Convertible Promissory Notes" ("DBW Amendment 1"), effective as of November 7, 2018, a copy of which is annexed hereto as Exhibit J, DBW and VNUE agreed, *inter alia*, to extend the maturity dates of the DBW Notes to November 30, 2018. Additionally, unpaid amounts were added to the principal of each of the DBW Notes, increasing the principal amounts to $26,310 and $43,526 respectively.

26.     Under DBW Amendment 1, the terms of the conversion features of the DBW Notes were revised.  In so doing, it was not the intention to charge or collect interest at a usurious rate.  Rather, it was understood that the conversion features of the Notes, as amended, were not to be included when calculating whether the Notes charged interest in excess of the legal limit.

27.     By "Amendment #2 to the Convertible Promissory Notes" ("DBW Amendment 2"), effective as of April 29, 2019, a copy of which is annexed hereto as Exhibit K, DBW and VNUE agreed, *inter alia*, to a further extension of the maturity dates of the DBW Notes to July 31, 2019.  Additionally, unpaid amounts again were added to the principal of each of the DBW Notes, increasing the principal amounts to $27,579 and 45,625 respectively.

28.     In entering into DBW Amendment 2, it was not the intention to charge or collect interest at a usurious rate.  Rather, it continued to be understood that the conversion features of the Notes, as amended, were not to be included when calculating whether the Notes charged interest in excess of the legal limit.

**Payment of the Notes and Accrued Interest**

29.     During 2019, VNUE made two interest payments of $5,874 and $2,517.  Since then, however, VNUE has failed to make any payments to Plaintiffs in accordance with the terms of the Notes, as amended.

**Conversion of the Notes and Accrued Interest into Common Stock**

30.     From July 2019 through November 2019, GOLOCK exercised its right under the conversion feature of GOLOCK Note 3, as amended, on five occasions.  The five conversions totaled $24,387.50, consisting of $20,637.97 in principal and $3,749.53 in interest.

31.     On or about December 19, 2019, GOLOCK issued a sixth Notice of Conversion (the "Sixth Notice of Conversion") respecting GOLOCK Note 3, electing to convert an additional $5,025.00, consisting of $4,753.82 of principal and $271.17 of interest.

32.     VNUE failed to issue the shares required by the Sixth Notice of Conversion and, upon information and belief, took steps to prevent its transfer agent from issuing shares to GOLOCK.

33.     In addition to its refusal to honor the Sixth Notice of Conversion, VNUE informed Plaintiffs that no shares would be made available to satisfy any additional Notices of Conversion that Plaintiffs might submit.

34.     On or about June 7, 2021, GOLOCK attempted once more to convert a portion of one of the GOLOCK Notes.  On this occasion, GOLOCK issued a Notice of Conversion (the "Seventh Notice of Conversion") respecting GOLOCK Note 5, electing to convert $54,331 of principal.

35.     VNUE failed to issue the shares required by the Seventh Notice of Conversion and, upon information and belief, took steps to prevent its transfer agent from issuing shares to GOLOCK.

36.     On or about June 18, 2021, in answer to an inquiry respecting the issuance of the shares pursuant to the Seventh Notice of Conversion, Zach Bair, the "CEO & Chairman" of VNUE, responded that VNUE would not honor any Notice of Conversion that Plaintiffs might submit and that VNUE would "lawyer up" and fight any attempt by Plaintiffs to convert the Notes into shares.

37.     Upon information and belief, in furtherance of the promise to "lawyer up" and fight any attempt by Plaintiffs to convert the Notes into shares, VNUE, in or about June 2021, procured a legal opinion and, on the basis of that opinion, maintained that it will not and need not process any Notices of Conversion issued by Plaintiffs.

**Stock Purchase Warrants**

38.     Pursuant to GOLOCK Amendment 2, VNUE agreed to issue to GOLOCK a Common Stock Purchase Warrant for 12,833,333 shares of VNUE common stock at a fixed exercise price of $0.00475 per share (the "GOLOCK Warrant").

39.     Pursuant to DBW Amendment 2, VNUE agreed to issue to DBW a Common Stock Purchase Warrant for 2,966,986 shares of VNUE common stock at a fixed exercise price of $0.00475 per share (the "DBW Warrant").

40.     Following the execution by Plaintiffs and VNUE of GOLOCK Amendment 2 and DBW Amendment 2, Plaintiffs prepared and submitted to VNUE for signature the GOLOCK and DBW Warrants, copies of which are annexed hereto as Exhibits L and M.

41.     Notwithstanding repeated requests by Plaintiffs, VNUE never signed or returned the GOLOCK and DBW Warrants.

**First Cause of Action**
**(Breach of the GOLOCK Notes – Unpaid Principal, Interest, and Default Interest)**

42.     Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein at length.

43.     The five GOLOCK Notes, as amended, matured on July 31, 2019.

44.     In breach of its obligations under each of the GOLOCK Notes, as amended, VNUE failed and refused to make payment of principal and interest.

45.     Annexed hereto as Exhibit N is a spreadsheet detailing the outstanding principal, interest, and default interest owed on the GOLOCK Notes, calculated through November 30, 2021, with credit given for the conversions completed respecting GOLOCK Note 3.  The spreadsheet accurately reflects the interest rates and default interest rates provided for in each of the GOLOCK Notes, as amended.

46.     As set forth in the spreadsheet, unpaid principal on the GOLOCK Notes, as amended, totals $340,935.03, accrued interest totals $3,515.57, accrued default interest totals $174,403.50, plus fees of 1,085.00, less a credit of 586.09 for additional interest paid in 2019, making for a total owed on the GOLOCK Notes, as amended, of $519,353.01.

47.     In the alternative, absent their amendment, each of the GOLOCK Notes has matured and VNUE has failed and refused to make payment of principal and interest.

48.     Annexed hereto as Exhibit O is a spreadsheet setting forth an alternative calculation of the outstanding principal, interest, and default interest owed on the unamended GOLOCK Notes.  The calculation is through November 30, 2021, with credit given for the conversions completed respecting GOLOCK Note 3.  The spreadsheet accurately reflects the

interest rates and default interest rates provided for in each of the GOLOCK Notes absent amendment.

49.     As set forth in the alternative calculation, unpaid principal on the GOLOCK Notes totals $272,876.87, accrued interest totals $1,356.11, accrued default interest totals $197,442.93, and fees of $1,085, making for a total owed on the GOLOCK Notes, absent amendment, of $472,760.91.

50.     Pursuant to the terms of each of the Notes, VNUE agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the holder in collecting any amount due under the Notes.

51.     By virtue of the foregoing, GOLOCK is entitled to recover from VNUE damages of not less than $472,760.91, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses.

**Second Cause of Action**
**(Breach of the DBW Notes – Unpaid Principal, Interest, and Default Interest)**

52.     Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein at length.

53.     The two DBW Notes, as amended, matured on July 31, 2019.

54.     In breach of its obligations under the DBW Notes, as amended, VNUE failed and refused to make payment of principal and interest.

55.     Annexed hereto as Exhibit P is a spreadsheet detailing the outstanding principal, interest, and default interest owed on the DBW Notes, calculated through November 30, 2021. The spreadsheet accurately reflects the interest rates and default interest rates provided for in each of the DBW Notes, as amended.

56.     As set forth in the spreadsheet, unpaid principal on the DBW Notes, as amended, totals $73,204.00, accrued interest totals $1,865.20, and accrued default interest totals $41,058.42 making for a total owed on the DBW Notes, as amended, of $116,127.62.

57.     In the alternative, absent their amendment, each of the DBW Notes has matured and VNUE has failed and refused to make payment of principal and interest.

58.     Annexed hereto as Exhibit Q is a spreadsheet setting forth an alternative calculation of the outstanding principal, interest, and default interest owed on the unamended DBW Notes. The calculation is through November 30, 2021. The spreadsheet accurately reflects the interest rates and default interest rates provided for in each of the DBW Notes absent amendment.

59.     As set forth in the alternative calculation, unpaid principal on the DBW Notes totals $56,000, accrued interest totals $4,194.25, and accrued default interest totals $42,326.79, making for a total owed on the DBW Notes, absent amendment, of $102,521.04.

60.     Pursuant to the terms of each of the Notes, VNUE agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the holder in collecting any amount due under the Notes.

61.     By virtue of the foregoing, DBW is entitled to recover from VNUE damages of not less than $102,521.04, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses.

### Third Cause of Action
#### (Breach of Contract – Refusing to Convert the GOLOCK Notes)

62.     Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein at length.

63.    Pursuant to GOLOCK Amendment 1 (Exhibit F hereto), the conversion features

of the first four GOLOCK Notes were amended as follows:

> 2.    For each [GOLOCK] Note, the Conversion terms
> (paragraph 4 (a) in the September 1, 2017, November 13, 2017 and
> February 2, 2018 notes and paragraph 3 in the October 4, 2017
> Notes (sic)) shall be replaced with:  The Holder of this Note is
> entitled, at its option, at any time, to convert all or any amount of
> the principal face amount of this Note then outstanding into shares
> of the Company's common stock (the "Common Stock") at a price
> ("Conversion Price") for each share of Common Stock equal to the
> lower of:  **(i) $0.015** or, **(ii) 58%** of the **lowest trading price** of the
> Common Stock as reported on the National Quotations Bureau
> OTC Market Exchange which the Company's shares are traded or
> any exchange upon which the Common Stock may be traded in the
> future ("Exchange"), for the ***twenty*** prior trading days including
> the day upon which a Notice of Conversion is received by the
> Company or its transfer agent (provided such Notice of Conversion
> is delivered by fax or other electronic method of communication to
> the Company or its transfer agent after 4 P.M. Eastern Standard or
> Daylight Savings Time if the Holder wishes to include the same
> day closing price).  If the shares have not been delivered within 3
> business days, the Notice of Conversion may be rescinded. Such
> conversion shall be effectuated by the Company delivering the
> shares of Common Stock to the Holder within 3 business days of
> receipt by the Company of the Notice of Conversion. Accrued but
> unpaid interest shall be subject to conversion. * * *

64.    Thereafter, by GOLOCK Amendment 2 (Exhibit G hereto), the Conversion Price

under section 2(ii) was changed to 50% of the lowest trading price.

65.    With respect to the Sixth Notice of Conversion that VNUE failed to honor,

GOLOCK requested and was entitled to the issuance to it of 33,500,000 shares three days after

issuance of the Notice of Conversion.  The Sixth Notice of Conversion was issued on December

19, 2019, making delivery of the shares due on December 22, 2019 which, being a Sunday,

rendered delivery due on December 23, 2019.

66.    VNUE's failure to deliver the shares on December 23, 2019 caused GOLOCK

damages of not less than the value of the shares on December 23, 2019.

67.     The high trading price per share for the common stock of VNUE on December

23, 2019 was $0.0004, fixing the value of the shares that VNUE failed to deliver at $13,400.

68.     GOLOCK Note 5 (Exhibit E hereto), which was issued subsequent to and,

consequently, not amended by either GOLOCK Amendment, contains a different method for

determining the "Conversion Price."  In relevant part, GOLOCK Note 5 provides:

> 1.2     Conversion Price. The conversion price (the
> "Conversion Price") shall equal the lower of: (i) $0.0015 per share
> or (ii) the Variable Conversion Price (as defined herein) (subject to
> equitable adjustments by the Borrower relating to the Borrower's
> securities or the securities of any subsidiary of the Borrower,
> combinations, recapitalization, reclassifications, extraordinary
> distributions and similar events), whichever is lower.  The
> "Variable Conversion Price" shall mean 60% multiplied by the
> Market Price (as defined herein) (representing a discount rate of
> 40%). "Market Price" means the lowest Trading Price (as defined
> below) for the Common Stock during the twenty (20) Trading Day
> period ending on the latest complete Trading Day prior to the
> Conversion Date. "Trading Price" means, for any security as of
> any date, the closing bid price on the OTCQB, OTCQX, Pink
> Sheets electronic quotation system or applicable trading market
> (the "OTC") as reported by a reliable reporting service ("Reporting
> Service") designated by the Holder (i.e. Bloomberg) or, if the OTC
> is not the principal trading market for such security, the closing bid
> price of such security on the principal securities exchange or
> trading market where such security is listed or traded or, if no
> closing bid price of such security is available in any of the
> foregoing manners, the average of the closing bid prices of any
> market makers for such security that are listed in the "pink sheets".
> If the Trading Price cannot be calculated for such security on such
> date in the manner provided above, the Trading Price shall be the
> fair market value as reasonably determined by the Borrower.
> "Trading Day" shall mean any day on which the Common Stock is
> tradable for any period on 3 the OTC, or on the principal securities
> exchange or other securities market on which the Common Stock
> is then being traded.
>
> Holder shall be entitled to deduct $500.00 from the
> conversion amount in each Notice of Conversion to cover Holder's
> deposit fees associated with each Notice of Conversion.  All
> expenses incurred by Holder with respect to the Borrower's
> transfer agent for the issuance of the Common Stock into which

> this Note is convertible into, shall immediately and automatically
> be added to the balance of the Note at such time as the expenses
> are incurred by Holder.

GOLOCK Note 5 also contains a "Most Favored Nation" clause entitling GOLOCK to convert

on terms at least as favorable as those granted by VNUE in future financing transactions with

other investors.

69.     With respect to the Seventh Notice of Conversion that VNUE failed to honor,

GOLOCK requested and was entitled to the issuance to it of 54,331,000 shares three days after

issuance of the Notice of Conversion.  The Seventh Notice of Conversion was issued on June 17,

2021, making delivery of the shares due on June 20, 2021 which, being a Sunday, rendered

delivery due on June 21, 2021.

70.     VNUE's failure to deliver the shares on June 21, 2021 caused GOLOCK damages

of not less than the value of the shares on June 21, 2021.

71.     The high trading price per share for the common stock of VNUE on June 21, 2021

was $0.0150, fixing the value of the shares that VNUE failed to deliver at $814,965.

72.     VNUE's steadfast refusal to issue shares in accordance with the conversion

features of the GOLOCK Notes, as amended, caused GOLOCK additional damage in that it

wrongfully was prevented from acquiring and selling additional shares of the common stock of

VNUE.

73.     In or about September 2020, GOLOCK sought confirmation from VNUE that it

would honor notices of conversion. Zach Bair, the "CEO & Chairman" of VNUE, responded

that VNUE would not honor notices of conversion and that no shares would be made available

for issuance to GOLOCK.

74.     Upon information and belief, although VNUE failed and refused to abide the conversion features of the GOLOCK Notes, it nonetheless continued its practice of obtaining funds from other lenders on terms comparable to those granted to GOLOCK – i.e., granting lenders the right to acquire stock at discounts to market of 35-50%.

75.     By virtue of VNUE's ongoing business practice of raising funds by offering stock to lenders at discounts comparable to those granted to GOLOCK, it is equitably estopped from objecting to the issuance of stock pursuant to the conversion features of the GOLOCK Notes.

76.     But for VNUE's wrongful refusal to permit conversions under the GOLOCK Notes, GOLOCK would have proceeded at the start of 2021 to capitalize on favorable market conditions by converting all outstanding principal, interest, and default interest.

77.     Had GOLOCK not been prevented from proceeding with the conversions of the GOLOCK Notes, it would have initiated and completed a series of conversions covering the full value of the GOLOCK Notes, including all accrued interest and default interest.

78.     Had GOLOCK not been prevented from converting the GOLOCK Notes, it would have acquired shares having a market value in excess of $4,000,000.

79.     Pursuant to the terms of each of the GOLOCK Notes, VNUE agreed that, in the event of an action by Plaintiffs to enforce their conversion rights under the GOLOCK Notes, Plaintiffs would be entitled to recover their costs of enforcement including, but not limited to, reasonable attorneys' fees and expenses.

80.     By virtue of the foregoing, GOLOCK has suffered damages in an amount to be proven at trial, but in no event less than $4,000,000, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses.

**Fourth Cause of Action**
**(Breach of Contract – Refusing to Convert the DBW Notes)**

81.     Plaintiffs repeat and reallege each of the foregoing allegations as if set forth

herein at length.

82.     Pursuant to DBW Amendment 1 (Exhibit J hereto), the conversion features of the

two DBW Notes were amended as follows:

> 2.     For each [DBW] Note, the Conversion terms (in
> paragraph 1 of the December 20, 2017 Note and paragraph 4 (a) in
> the January 18, 2018 Note) shall be replaced with:  The Holder of
> this Note is entitled, at its option, at any time, to convert all or any
> amount of the principal face amount of this Note then outstanding
> into shares of the Company's common stock (the "Common
> Stock") at a price ("Conversion Price") for each share of Common
> Stock equal to the lower of:  **(i) $0.015** or, **(ii) 58%** of the **lowest**
> **trading price** of the Common Stock as reported on the National
> Quotations Bureau OTC Market Exchange which the Company's
> shares are traded or any exchange upon which the Common Stock
> may be traded in the future ("Exchange"), for the ***twenty*** prior
> trading days including the day upon which a Notice of Conversion
> is received by the Company or its transfer agent (provided such
> Notice of Conversion is delivered by fax or other electronic
> method of communication to the Company or its transfer agent
> after 4 P.M. Eastern Standard or Daylight Savings Time if the
> Holder wishes to include the same day closing price).  If the shares
> have not been delivered within 3 business days, the Notice of
> Conversion may be rescinded. Such conversion shall be
> effectuated by the Company delivering the shares of Common
> Stock to the Holder within 3 business days of receipt by the
> Company of the Notice of Conversion. Accrued but unpaid interest
> shall be subject to conversion. *  *  *

83.     Thereafter, by DBW Amendment 2 (Exhibit K hereto), the Conversion Price

under section 2(ii) was changed to 50% of the lowest trading price.

84.     As a result of the efforts by GOLOCK to convert portions of the GOLOCK Notes,

DBW learned that VNUE also would not honor Notices of Conversion issued in connection with

the DBW Notes.

85.     Upon information and belief, although VNUE would not abide the conversion features of the DBW Notes, it nonetheless continued its practice of obtaining funds from other lenders on terms comparable to those granted to DBW – i.e., granting lenders the right to acquire stock at discounts to market of 35-50%.

86.     By virtue of VNUE's ongoing business practice of raising funds by offering stock to lenders at discounts comparable to those granted to DBW, it is equitably estopped from objecting to the issuance of stock pursuant to the conversion features of the DBW Notes.

87.     VNUE's steadfast refusal to issue shares in accordance with the conversion features of the DBW Notes, as amended, caused DBW damage in that it wrongfully was prevented from acquiring and selling shares of the common stock of VNUE.

88.     But for VNUE's wrongful refusal to permit conversions under the DBW Notes, DBW would have proceeded at the start of 2021 to capitalize on favorable market conditions by converting all outstanding principal, interest, and default interest.

89.     Had DBW not been prevented from proceeding with the conversions of the DBW Notes, it would have initiated and completed a series of conversions covering the full value of the DBW Notes, including all accrued interest and default interest.

90.     Had DBW not been prevented from converting the DBW Notes, it would have acquired shares having a market value in excess of $1,000,000.

91.     Pursuant to the terms of each of the DBW Notes, VNUE agreed that, in the event of an action by Plaintiffs to enforce their conversion rights under the DBW Notes, Plaintiffs would be entitled to recover their costs of enforcement including, but not limited to, reasonable attorneys' fees and expenses.

92.    By virtue of the foregoing, DBW has suffered damages in an amount to be proven at trial, but in no event less than $1,000,000, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses.

**Fifth Cause of Action**
**(Breach of Contract – Damages for Failure to Deliver the GOLOCK Warrant)**

93.    Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein at length.

94.    Pursuant to GOLOCK Amendment 2, GOLOCK was entitled to the issuance of the GOLOCK Warrant.

95.    VNUE breached its obligation to GOLOCK under GOLOCK Amendment 2 by failing to deliver the GOLOCK Warrant and preventing GOLOCK from exercising its rights thereunder.

96.    By virtue of VNUE's breach of GOLOCK Amendment 2 and failure to deliver the GOLOCK Warrant, GOLOCK was damaged in that it wrongfully was prevented from acquiring 12,833.333 shares of VNUE common stock having a value of not less than $385,000.

97.    By virtue of the foregoing, GOLOCK is entitled to recover from VNUE damages of not less than $385,000, plus the costs and disbursements of this action.

**Sixth Cause of Action**
**(Breach of Contract – Damages for Failure to Deliver the DBW Warrant)**

98.    Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein at length.

99.    Pursuant to DBW Amendment 2, DBW was entitled to the issuance of the DBW Warrant.

100.    VNUE breached its obligation to DBW under DBW Amendment 2 by failing to deliver the DBW Warrant and preventing DBW from exercising its rights thereunder.

101.    By virtue of VNUE's breach of DBW Amendment 2 and failure to deliver the DBW Warrant, DBW was damaged in that it wrongfully was prevented from acquiring 2,966,986 shares of VNUE common stock having a value of not less than $89,010.

102.    By virtue of the foregoing, DBW is entitled to recover from VNUE damages of not less than $89,010, plus the costs and disbursements of this action.

**Seventh Cause of Action**
**(Declaratory and Injunctive Relief, Specific Performance)**

103.    Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein at length.

104.    Pursuant to irrevocable instructions issued as of July 5, 2019 (the "Irrevocable Instructions"), copies of which are annexed hereto as Exhibit R, VNUE and its former stock transfer agent, VStock Transfer, LLC ("VStock"), agreed to reserve shares of the common stock of VNUE sufficient for the conversion of the Convertible Notes, including accrued interest.

105.    The Irrevocable Instructions specified a reserve of 75,000,000 shares for the GOLOCK Notes and 25,000,000 shares for the DBW Notes (each, the "Reserved Shares"). The amounts of Reserved Shares, however, were subject to increase:

> The Investor shall have the right to periodically request that the number of Reserved Shares be increased so that the number of Reserved Shares at least equals but does not exceed **400%** of the number of shares of Company common stock issuable upon conversion of the Notes.

106.    GOLOCK Note 5 also anticipated an increase in Reserved Shares upon the "pay off of the August 2, 2019 $30,000.00 Power Up convertible promissory note" (the "Power Up Note"). Upon information and belief, following the conversion of the Power Up Note, there

remained 289,873,055 reserved shares, 90% of which, i.e., 260,885,750 shares, should have been but never were reallocated as Reserved Shares for the GOLOCK Notes.

107.    Pursuant to the Irrevocable Instructions, VNUE "irrevocably authorized and directed [its stock transfer agent] to issue the shares of Commons Stock so reserved upon your receipt from the Investor of a notice of conversion … in accordance with the terms of the Notice of Conversion."  VNUE also committed to the issuance of the shares within three business days of receipt by it or its transfer agent of a Notice of Conversion.

108.    The Irrevocable Instructions also address the appointment of a successor transfer agent:

> The Company agrees that in the event that the Transfer Agent resigns as the Company's transfer agent, the Company shall engage a suitable replacement transfer agent that will agree to serve as transfer agent for the Company and be bound by the terms and conditions of these Irrevocable Instructions within five (5) business days.

109.    Upon information and belief, VStock served as transfer agent for VNUE until late June 2021.

110.    Upon information and belief, in or about late June 2021, VNUE terminated VStock as its transfer agent in order to block VNUE from issuing shares to GOLOCK in accordance with the Seventh Notice of Conversion (issued June 7, 2021) and VStock's obligation to do so pursuant to the Irrevocable Instructions.

111.    Upon information and belief, at the time of its termination in late June 2021, VStock held 177,000,000 Reserved Shares for GOLOCK and 25,000,000 Reserved Shares for DBW.

112.    Upon information and belief, VNUE retained ClearTrust, LLC ("ClearTrust"), based in Lutz, Florida, to act is its transfer agent in place of VStock.

113.    Upon information and belief, notwithstanding the requirement that VNUE's new transfer agent agree to be bound by the terms and conditions of the Irrevocable Instructions within five business days, VNUE did not secure ClearTrust's consent to be bound by the Irrevocable Instructions.  Consequently, unlike VStock, ClearTrust is not contractually obligated in connection with the Convertible Notes to maintain Reserved Shares or issue shares to GOLOCK and DBW.

114.    Upon information and belief, notwithstanding VNUE's refusal to honor Plaintiffs' conversion rights under the Notes, it has permitted other investors to convert debt to equity.  By way of example, in May 2021, VNUE disclosed that its largest investor, YLimit, LLC, had converted $963,000 of debt into stock.

115.    According to VNUE's Form 10-Q for the quarterly period ended June 30, 2021, filed with the Securities and Exchange Commission and dated August 16, 2021, VNUE obtained a "legal opinion" on the basis of which it "reversed the liability [to Plaintiffs] on its balance sheet" and will not process conversion notices issued by Plaintiffs.

116.    Independent of Plaintiffs' rights to receive shares pursuant to the terms of the Convertible Notes are Plaintiffs' rights to acquire shares of the common stock of VNUE in accordance with the GOLOCK and DBW Warrants that VNUE agreed to issue to Plaintiffs in connection with GOLOCK Amendment 2 and DBW Amendment 2.

117.    Pursuant to the terms of the GOLOCK and DBW Warrants, VNUE was and is required to reserve four times the number of shares to which Plaintiffs were and are entitled to acquire.

118.    Upon information and belief, VNUE has failed to reserve shares to cover the issuance of shares pursuant to the GOLOCK and DBW Warrants.

119.    Upon information and belief, VNUE lacks revenue or assets with which to satisfy a money judgment for its liability under the Notes, GOLOCK Warrant, or DBW Warrant.

120.    Plaintiffs are without an adequate remedy at law.

121.    By virtue of the foregoing, Plaintiffs are entitled to equitable relief in the form of an order and judgment:  (a) declaring the rights of the parties including, but not limited to, a declaration that the legal opinion procured by VNUE may not be relied upon to avoid the issuance of shares to Plaintiffs; (b) granting a mandatory injunction compelling VNUE and its transfer agent to reserve shares for Plaintiffs and comply with Notices of Conversion and Notices of Exercise (in the case of the GOLOCK and DBW Warrants) that may be issued by Plaintiffs; and (c) directing VNUE and its transfer agent to comply with and specifically perform the issuance of shares pursuant to the Sixth and Seventh Notices of Conversion.

**Eighth Cause of Action**
**(Unjust Enrichment)**

122.    Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein at length.

123.    Upon information and belief, VNUE may argue in defense of this action that one or more of the Notes and/or Amendments are unenforceable based on the change in New York law established by *Adar Bays, LLC v. GeneSYS ID, Inc.*, 2021 N.Y. LEXIS 2206 (Oct. 14, 2021).

124.    With respect to each and every Note issued by VNUE to Plaintiffs, it received cash consideration.

125.    With respect to each of the GOLOCK and DBW Amendments, VNUE negotiated for and secured deferrals of its defaults on Plaintiffs' Notes.

126.    VNUE benefitted by and was enriched by each of the Notes and Amendments.

127.     To this day, VNUE continues to secure capital from investors on terms comparable to those provided to Plaintiffs.

128.     To the extent that VNUE may, on the basis of *Adar Bays*, now be able to void any of the Notes or Amendments, that will come at the expense of one or both of the Plaintiffs.

129.     Given all of the circumstances, it would be against equity and good conscience to permit VNUE to avoid the payment of principal, interest, and default interest in connection with any Note or Amendment that might be found unenforceable pursuant to *Adar Bays*.

130.     Given all of the circumstances, it would be against equity and good conscience to permit VNUE to avoid payment of the consideration that it promised to Plaintiffs in exchange for the capital that Plaintiffs provided.

131.     By virtue of the foregoing, Plaintiffs are entitled to recover a judgment for damages against VNUE in an amount to be proven at trial, plus the costs and disbursements of this action.

WHEREFORE, Plaintiffs demand a judgment against VNUE as follows:

A.     On the first cause of action, a money judgment in favor of GOLOCK and against VNUE of not less than $472,760.91, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses;

B.     On the second cause of action, a money judgment in favor of DBW and against VNUE of not less than $102,521.04, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses;

C.     On the third cause of action, a money judgment in favor of GOLOCK and against VNUE, in an amount to be proven at trial, but in no event less than $4,000,000, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses;

D.      On the fourth cause of action, a money judgment in favor of DBW and against VNUE, in an amount to be proven at trial, but in no event less than $1,000,000, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses;

E.      On the fifth cause of action, a money judgment in favor of GOLOCK and against VNUE, in an amount to be proven at trial, but in no event less than $385,000, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses;

F.      On the Sixth cause of action, a money judgment in favor of DBW and against VNUE, in an amount to be proven at trial, but in no event less than $89,010, plus the costs and disbursements of this action, including reasonable attorneys' fees and expenses;

G.      On the Seventh cause of action, an order and judgment:  (a) declaring the rights of the parties including, but not limited to, a declaration that the legal opinion procured by VNUE may not be relied upon to avoid the issuance of shares to Plaintiffs; (b) granting a mandatory injunction compelling VNUE and its transfer agent to reserve shares for Plaintiffs and comply with Notices of Conversion and Notices of Exercise (in the case of the GOLOCK and DBW Warrants) that may be issued by Plaintiffs; and (c) directing VNUE and its transfer agent to comply with and specifically perform the issuance of shares pursuant to the Sixth and Seventh Notices of Conversion;

H.      On the Eighth cause of action, a money judgment in favor of Plaintiffs and against VNUE in an amount to be proven at trial, and

I.      The costs and disbursements of this action, including Plaintiffs' legal fees and expenses.

### Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action of all issues so triable.

Dated:  December 2, 2021

The Law Offices of
DANIEL S. STEINBERG P.C.

By: _____
         Daniel S. Steinberg
         Melissa A. Cohen
*Attorneys for Plaintiffs*
355 Lexington Avenue, Suite 401
New York, NY 10017
212.666.3316
*daniel@dsteinberglaw.com*